## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

**ADVANCE MORTGAGE &**
**INVESTMENT COMPANY, LLC**

                  **Plaintiff,**       **JURY DEMAND**

                                   **CIVIL NO:**   1:25-cv-269

      **vs.**

**UNITED STATES OF AMERICA**

                  **Defendant.**

---

## COMPLAINT

    Advance Mortgage & Investment Company, LLC (hereinafter "Plaintiff or "AMIC"), by and through its undersigned counsel files this Complaint against Defendant, United States of America ("Defendant" or "United States") pursuant to 26 U.S.C. § 7422.  Plaintiff files this civil action for a federal tax refund totaling $ 1,221,181.92, plus interest, claimed for refund against Plaintiffs' payroll tax returns March 31, 2021, June 30, 2021, and September 30, 2021 (the 1st, 2nd & 3rd quarters of 2021) that were duly and timely claimed and filed with the Defendant's nonparty agency, the Internal Revenue Service (the "IRS" or the "Service") on or about June

26, 2023, yet remain unchallenged and unpaid to Plaintiffs by the Defendant or the Service.

## I.    JURISDICTION, VENUE, AND PARTIES

1.    Jurisdiction of this Court is proper pursuant to 28 U.S.C. §§ 1340 and 1346.

2.    Venue of this Court is proper pursuant to 28 U.S.C. § 1402.

3.    Plaintiff, Advance Mortgage & Investment Company, LLC, is formed as a Limited Liability Company (LLC) under the laws of the State of Florida and is registered as a foreign entity to conduct business in Alabama, and whose principal place of business is at 30500 State Highway 181, Suite 460, Spanish Fort, AL 36527.

4.    Defendant is the United States of America and may be served by mailing two copies of this Complaint, along with a copy of the Court-issued Summons, by certified mail to the civil-process clerk of the United States Attorney for the Southern District of Alabama at 63 South Royal Street, Suite 600, Mobile, AL 36602, and mailing two copies of the Complaint by certified mail to The Honorable Pamela Bondi, Attorney General of the United States, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001.

5.    Defendant's nonparty agency, the Internal Revenue Service (the "IRS" or the "Service"), has factual relevance to this action and is referenced throughout this Complaint, and the IRS may be additionally served by mailing two copies of

this Complaint by certified mail, along with a copy of the Court-issued Summons, by certified mail to the Internal Revenue Service, 1111 Constitution Avenue, NW., Washington, DC 20224.

## II.    NATURE OF THE FEDERAL TAX ISSUE AND ACTION

### A.    Federal Employment Taxes

6.    Pursuant to federal law, employers are required to withhold certain federal income taxes and taxes from the Federal Insurance Contributions Act ("FICA Payroll Taxes") from their employee's wages and other compensation.

7.    Pursuant to 26 U.S.C. §§ 3102, 3111, 3301 and 3402, employers are also required to pay their own portion of FICA Payroll Taxes and taxes from the Federal Unemployment Taxes and Federal Unemployment Tax Act ("FUTA Taxes"), and FICA Payroll Taxes and FUTA Taxes are collectively commonly referred to as "employment taxes" or "payroll taxes".

8.    Pursuant to 26 U.S.C. §§ 6302 and 6157, as well as 26 C.F.R. §§ 31.6302-1, 31.6302(c)-1, and 31.6302(c)-3, employers are required to periodically deposit employment tax payments in certain prescribed federal deposit banks.

9.    Pursuant to 26 U.S.C. § 6011, as well as 26 C.F.R. § 31.6071(a)-1, employers are further required to file quarterly payroll tax returns ("IRS Form 941" or "Form 941") and annual returns for their FUTA Taxes.

### B.    The COVID-19 Pandemic-Related "CARES" Act
### Employee Retention Credit ("ERC")

10.    At the outset of the global COVID-19 pandemic, the United States enacted the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") on March 27, 2020, which provided numerous federal government programs and funding in response to the economic challenges faced by the American people, businesses, and taxpayers.[1]

11.    Amongst the CARES Act provisions, section 2301 provided for a new Employee Retention Credit ("ERC" or "ERTC"), which is a "refundable" tax credit applied against the employer-portion of businesses employment taxes for the period from March 12 through December 31, 2020.[2]  Section 2301 of the CARES Act was later amended by the Taxpayer Certainty and Disaster Relief Act of 2020 (the "Relief Act") to extend ERC into the first two quarters of 2021.[3]  The American Rescue Plan Act of 2021 ("ARPA" or "ARPA 2021") further extended ERC through the end of 2021.[4]  The Infrastructure Investment and Jobs Act ("IIJA") later removed eligibility

---

[1] *See* The Coronavirus Aid, Relief and Economic Security Act (CARES Act), Pub. L. No 116-136, 134 Stat. 281 (2020).

[2] *See id.*

[3] *See* The Taxpayer Certainty and Disaster Relief Act of 2020, Pub. L. 116-260, Div. EE (2020).

[4] *See* The American Rescue Plan Act of 2021, Pub. L. 117-2, 135 Stat. 4 (March 11, 2021).

for most employers in the fourth quarter of 2021.[5]  The ERC credit was ultimately codified as 26 U.S.C. § 3134, where Title 26 is the "Internal Revenue Code."

12.     Pursuant to 26 U.S.C § 3134(c)(2)(A)(ii), ERC provides a few different avenues of qualification, and all aimed at both incentivizing and rewarding businesses maintaining employment during the COVID-19 pandemic in 2020 and 2021.  Specifically:

    a.  Certain businesses meeting certain defined business disruption criteria by quarter were equally eligible for the same per employee refundable ERC tax credit by quarter,

    b.  Businesses who demonstrated certain quantitatively defined gross receipt drops by quarter, as compared to pre-pandemic periods, were eligible for a per employee per quarter refundable ERC tax credit, or

    c.  Certain businesses defined as "recovery startup businesses."

**C.     ERC Qualification – Partial Suspension of Business Operations**

13.     Pursuant to section 2301(c) of the CARES Act, as amended by section 207(a)(1) of the Relief Act, additionally amended by ARPA and IIJA, and finally codified in 26 U.S.C. § 3134, employers are eligible for the ERC tax credit in quarters where the:

---

[5] *See* Infrastructure Investment and Jobs Act, Pub. L. 117-58, 135 Stat. 429 (Nov. 15, 2021).

"[O]peration of the trade or business described in clause (i) is fully or partially suspended during the calendar quarter due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease 2019 (COVID–19)".[6]

14.     In absence of a Treasury Regulation for authoritative interpretation of the Employee Retention Credit, the IRS Office of the Associate Chief Counsel issued Notice 2020-21, *Guidance on the Employee Retention Credit under Section 2301 of the Coronavirus Aid, Relief, and Economic Security Act*, on March 1, 2021. Notice 2020-21 offered much needed IRS interpretation of the Employee Retention Credit program, including 71 Questions and Answers providing a variety of qualitative interpretations for different ERC issues.

15.     Additionally, as related to partial suspension of operations, per Question and Answer No. 17:

"If all, or all but a nominal portion, of an employer's business operations may continue, but the operations are subject to modification due to a governmental order (for example, to satisfy distancing requirements), such a modification of operations is considered to be a partial suspension of business operations due to a governmental order

---

[6] CARES Act, Pub. L. No 116-136 at 2301(c).

if the modification required by the governmental order has more than a nominal effect on the business operations under the facts and circumstances."[7]

16.    Further, Question and Answer No. 18 of Notice 2021-20 clarifies that a modification due to a government order alone is not enough but additionally clarifies that a partial suspension exists with a more than nominal effect on the business as a result of the government order and is based on the facts and circumstances of the respective taxpayer and claim.

17.    Amongst the manners in which an employer can demonstrate a more than nominal effect on the business as a result of a government order based on the facts of circumstances, include the following in Question and Answer No. 18 of Notice 2021-20:

> "A governmental order that results in a reduction in an employer's ability to provide goods or services in the normal course of the employer's business of not less than 10 percent will be deemed to have more than a nominal effect on the employer's business operations."[8]

---

[7] *Id.* at Q/A 17, pgs. 34-45.
[8] *Id.* at Q/A 18, pg. 39

**D.    COVID-19 Gov't Orders – Federal CARES Act §§ 4022, 4023, 4024 Mortgage Forbearance and Foreclosure & Eviction Moratoriums**

18.    Pursuant to section 4022 of the CARES Act, certain residential mortgage holders with federally-backed mortgage loans were provided additional forbearance options of 180 to 360 days and a 60-day foreclosure moratorium, starting March 18, 2020, for which mortgage loan holder and service providers were required to provide and for which "federal-back mortgage loan" were defined under sub-section (a)(2) of 4022 and included those:

  a.    Insured by the Federal Housing Administration ("FHA") under title II of the National Housing Act (12 U.S.C. 1707 et seq.),

  b.    Insured under section 255 of the National Housing Act (12 U.S.C. 1715z–20),

  c.    Guaranteed under section 184 or 184A of the Housing and Community Development Act of 1992 (12 U.S.C. 1715z–13a, 1715z–13b),

  d.    Guaranteed or insured by the Department of Veterans Affairs,

  e.    Guaranteed or insured by the Department of Agriculture,

  f.    Made by the Department of Agriculture, or

  g.    Purchased or securitized by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association.

19.    Pursuant to section 4023 of the CARES Act, certain residential property borrowers with Federally backed mortgage loans could request forbearance, due to the issues surrounding the COVID-19 pandemic; effective from the enactment of the CARES Act on March 27, 2020 through December 31, 2020.

20.    Pursuant to section 4024 of the CARES Act, lessees of certain residential properties with Federally backed mortgage loans, amongst other possible reasons, were exempt from being subject to eviction filings temporarily, due to the issues surrounding the COVID-19 pandemic; effective from the enactment of the CARES Act on March 27, 2020 and for the subsequent one-hundred and twenty (120) days.

21.    The federal government orders of sections 4022, 4023, and 4024 of the CARES Act, as summarized in statement nos. 18, 19, and 20 above, are the type of orders from an appropriate governmental authority limiting commerce, travel, or group meetings due to COVID-19 within the meaning and as contemplated by section 2301(c) of the CARES Act.

### E.  COVID-19 Gov't Orders – U.S. Dept. of Housing & Urban Dev. (HUD) Mortgage Forbearance and Eviction & Foreclosure Moratorium

22.    Pursuant to 42 U.S.C. § 3533(b) and 12 U.S.C. § 1715b, the Assistant Secretary for Housing – Federal Housing Commissioner (the "Housing Commissioner") of the Defendant's nonparty agency, the Department of Housing

and Urban Development ("HUD"), issued several Mortgagee Letters ("MLs") during 2020 and 2021 that were orders of the type limiting commerce, travel, or group meetings due to COVID-19 within the meaning and as contemplated by section 2301(c) of the CARES Act.[9]  See **Exhibit A** attached to this filing, *herein*, which are copies of the most relevant HUD COVID-19 MLs during 2020 and 2021.

23.    On March 18, 2020, the Housing Commissioner issued ML 2020-04, *Foreclosure and Eviction Moratorium in connection with the Presidentially-Declared COVID-19 National Emergency*, that mirrored section 4022 of the CARES Act and provided a foreclosure and eviction moratorium for all FHA-insured Single Family mortgages for a period of 60 days.[10]

24.    The Housing Commissioner subsequently issued several other MLs in 2020 and 2021 that extended ML 2020-04's COVID-19 foreclosure and eviction moratorium several times, without any lapse, though at least September 30, 2021.[11]

25.    Additionally, on April 1, 2020, the Housing Commissioner issued ML 2020-06, *FHA's Loss Mitigation Options for Single Family Borrowers Affected by the Presidentially-Declared COVID-19 National Emergency in Accordance with the*

---

[9] *See* U.S. Dept. of Housing and Urban Development (HUD), ML 2020-04 (March 18, 2020); ML 2020-13 (May 14, 2020); ML 2020-19 (June 17, 2020); ML 2020-27 (Aug. 27, 2020); ML 2020-43 (Dec. 17, 2020); ML 2021-03 (Jan. 21, 2021); ML 2021-05 (Feb. 17, 2021); ML 2021-15 (June 25, 2021); ML 2021-19 (July 30, 2021).
[10] *Id.* at 2020-40.
[11] *Id.* at 2020-13; 2020-19; 2020-27; 2020-43; 2021-03; 2021-05; 2021-15; 2021-19.

*CARES Act*, which provided loss mitigation options to residential mortgage borrowers under the FHA Title II Single Family mortgage programs, including forbearance for borrowers affected by the COVID-19 National Emergency; effective through October 30, 2020.[12]

26.    The Housing Commissioner subsequently issued several other MLs in 2020 and 2021 that extended ML 2020-06's COVID-19 forbearance options several times, without any lapse, though at least September 30, 2021.[13]

**F.    COVID-19 Gov't Orders – U.S. Consumer Financial Protection Bureau (CFPB) - 12 C.F.R. Part 1024 – Mortgage Loss Mitigation & Forbearance**

27.    Pursuant to 12 U.S.C. § 5491, the Director of the Consumer Financial Protection Bureau ("CFPB") issued the CFPB's final rule to amend Regulation X, *Protections for Borrowers Affected by the COVID-19 Emergency Under the Real Estate*, on June 25, 2021 (the "CFPB Final Rule") to assist mortgage borrowers affected by the COVID-19 emergency that included orders of the type limiting commerce, travel, or group meetings due to COVID-19 within the meaning and as contemplated by section 2301(c) of the CARES Act.[14]  See **Exhibit B** attached to this filing, *herein*, which is a copy of the CFPB Final Rule.

---

[12] *Id.* at 2020-06 (April 1, 2020).

[13] *See id.* at 2020-34 (Oct. 20, 2020); 2020-44 (Dec. 17, 2020); 2021-04 (Jan. 26, 2021); 2021-15.

[14] *See* 12 C.F.R Part 1024, 86 FR 34848 (June 25, 2021); *see also Seila Law LLC v. Consumer Financial Protection Bureau*, 601 U.S. 416 (2024).

28.    The CFPB Final Rule required mortgage loan service providers, effective August 31, 2021 and until January 1, 2022, to provide specific loss mitigation options to borrowers and offer protections against foreclosure initiation until January 1, 2022, and as consistent with the provisions of section 4022 of the CARES Act.[15]

29.    Further, the CFPB Final Rule defined borrowers impacted by the COVID-19 pandemic, and thus eligible for the CFPB Final Rule loss mitigation options and foreclosure mortarium, as a borrower who experienced:

> "[A] financial hardship due, directly or indirectly, to the national emergency for the COVID-19 pandemic declared in Proclamation 9994 on March 13, 2020 (beginning on March 1, 2020) and continued on February 24, 2021, in accordance with section 202(d) of the National Emergencies Act (50 U.S.C.1622(d))."[16]

### G.    ERC – Credit Amount Determination

30.    For the March 12 through December 31, 2020 time periods and pursuant to sections 2301(a) and (b)(1) of the CARES Act, eligible employers receive a tax credit against employment taxes of up to 50 percent of qualified wages

---

[15] *See* 12 C.F.R Part 1024; *see also* CARES Act, Pub. L. No 116-136 at 4022.
[16] 12 C.F.R Part 1024 at pg. 31.

($10,000 per employee for the year including certain health care expense), but no more than $5,000 per employee total for the 2020 year.

31.    For the July 1 through September 30, 2021 time period (the third quarter of 2021) and pursuant to sections 2301(a) and (b)(1) of the CARES Act, as amended by sections 207(b) and (c) of the Relief Act, additionally amended by ARPA and IIJA and latter codified in 26 U.S.C. §§ 3134(a) & (b)(1)(A), eligible employers receive a tax credit against employment taxes of up to 70 percent ($10,000 per employee per calendar quarter including certain health care expenses), but no more than $7,000 per quarter per employee for each eligible 2021 quarter.

32.    Section 2301(g) of the CARES Act, as amended by section 206(c)(2) of the Relief Act, and 26 U.S.C. § 3134(h)(2) provide that any payroll costs covered as "forgiven" by the Paycheck Protection Program (PPP) of the 2020 CARES Act are excluded  "qualifying wages" for purposes of the ERC tax credits.[17]

### H.    ERC – Refundability and Amendment for Refund Claim

33.    Pursuant to section 2301(b), *et al*, and 26 U.S.C. § 3134(b), ERC tax credit claims are first used to offset employment taxes for the respective period, and any excess is further "refunded" to the taxpayer claimant per 26 U.S.C. §§ 6402(a) and 6413(b).

---

[17] *See also* The Coronavirus Aid, Relief and Economic Security Act (CARES Act), Pub. L. No 116-136, 134 Stat. 281(2020).

34.     Pursuant to 26 U.S.C. § 6511, taxpayers have up to three (3) years from the date of filing a tax return to amend the same return for a claim for refund or credit of taxes, and further pursuant to 26 U.S.C. § 6513(c), the date of filing for payroll tax returns are deemed filed on April 15th of the succeeding calendar year.

I.    **Submitting Amended Tax Returns & Other Tax Documents to the IRS**

35.     Pursuant to 26 U.S.C. § 7502, the "date of delivery" of any taxpayer's submission or filing of "any return, claim, statement, or other document" submitted by mail is the postmark date of the mailing.

36.     Pursuant to 26 U.S.C. § 7502(c) and 26 C.F.R. § 301.7502-1, such mailings described in statement no. 35 above that are mailed via the United States Postal Service (USPS) via "registered mail" or "certified mail" is *prima facie* evidence that such a mailing was "delivered" to the IRS on the postmark date; the postmark date being the date of registered mail registration and/or certified mail payment.

37.     Further, pursuant to 26 U.S.C. § 7502(c) and 26 C.F.R. § 301.7502-1, the IRS may also identify "Private Delivery Services" ("PDS"), e.g. DHL Express, FedEx, and UPS, from time-to-time that are permitted to serve in place of USPS

mailings for purposes of applying the rules of 26 U.S.C. § 7502 and 26 C.F.R. § 301.7502-1.[18]

### III.    PLAINTIFF BACKGROUND AND FACTUAL ASSERTIONS

#### A.    Company Overview – Mortgage Loan Service Provider

38.    Based in Spanish Fort, AMIC is a licensed mortgage lender based in Spanish Fort, Alabama, for which it originates and finances home mortgage loans for residential homeowners.

39.    During the 2nd, 3rd & 4th quarters of 2020 and the 1st, 2nd & 3rd quarters of 2021, Plaintiff had less than five-hundred (500) employees for its payroll tax return filings, operationally domestically and were subject to FICA Payroll Taxes.

40.    During the entirety of calendar years 2019 through 2021, Plaintiff could account for all revenues classified in several categories of mortgages, including that that are FHA-Insured.

#### B.    COVID-19 Partial Suspension – FHA-Insured Mortgages

41.    Prior to the onset of the COVID-19 pandemic and during the 2019 Calendar Year, FHA-insured mortgages were more than a nominal portion of Plaintiff's operations; insomuch as it exceeded ten-percent (10%) of gross receipts for all of AMIC.

---

[18]    *See also* Private Delivery Services PDS, Internal Revenue Service, https://www.irs.gov/filing/private-delivery-services-pds.

42.     Throughout the 1st, 2nd & 3rd quarters of 2021, the CARES Act, HUD, and CFPB COVID-19 government orders with respect to residential mortgages that are FHA-Insured, per statement nos. 18 through 29 above, required AMIC to modify its operations.

43.     Throughout the 1st, 2nd & 3rd quarters of 2021, Plaintiff's modifications for the FHA-Insured mortgages required by the governmental order per statement no. 42 above had more than a nominal effect on the business operations under the facts and circumstances.

44.     Additionally or in the alternative, throughout the 1st, 2nd & 3rd quarters of 2021, Plaintiff's portion of its business for the FHA-Insured mortgages of its business experienced a reduction of gross receipts of greater than ten-percent (10%), as compared to 2019 on a quarter by quarter basis, due to the federal and state COVID-19 governmental orders per statement nos. 42 above, and that required modifications per statement no. 43 above.

### C.    Plaintiff ERC Credit Claims

45.     For the 1st, 2nd & 3rd quarters of 2021, Plaintiff timely determined and executed its quarterly and annual employment tax payment and reporting; most specifically through its timely filed quarterly reports via the IRS Forms 941, *Employer's QUARTERLY Federal Tax Return*.   For its original timely filings, Plaintiff did not claim the ERC tax credits.

46.     Subsequently, Plaintiff determined that it qualified for ERC tax credits for the the 1st, 2nd & 3rd quarters of 2021 pursuant to the "Full or Partial Suspension of Operations" qualification test of section 2301(c)(2)(A)(ii)(I) of the CARES Act, as amended by section 207(d)(1)(A) of the Relief Act, and further codified in 26 U.S.C. § 3134(c)(2)(A)(ii)(I).

47.     Further, Plaintiff calculated its ERC tax credits for the 1st, 2nd & 3rd quarters of 2021 as summarized in the table below:

| i. Payroll Tax Quarter End | ii. Total ERC Credit Refund Claim |
|---|---|
| a.   3/31/2021 | 386,359.91 |
| b.   6/30/2021 | 401,117.82 |
| c.   9/30/2021 | 433,704.19 |
| d.   Total | 1,221,181.92 |

48.     On or before June 26, 2023, Plaintiff timely filed amended quarterly federal employment tax reports with Defendant's nonparty agency, the IRS, for the the 2nd, 3rd & 4th quarters of 2020 and the 1st, 2nd & 3rd quarters of 2021 with claims for refund requested pursuant to the ERC tax credits for these quarters (hereafter collectively referred to as the "Plaintiff's Pending ERC Credit Claims") in the amounts summarized in statement no. 47 above and filed via Forms 941-X, *Adjusted Employer's QUARTERLY Federal Tax Return or Claim for Refund*.

49.    Since the filings described in statement no. 48 above, Defendant and IRS have further failed to issue any further notices of audit, examination, disallowance, or deficiency that may justify any further refund delays, regarding Plaintiff's Pending ERC Tax Credit claims.

50.    Since the filings described in statement no. 48 above, Defendant or the IRS have made no claim to the Plaintiff of any federal taxes owed by Plaintiff, regardless of nature and time period, under Title 26 of the United State Code that the ERC credits for the Plaintiff's Pending ERC Credit Claims would be appropriate to use as an offset for any such owed taxes.

51.    Since the filings described in statement no. 48 above, Defendant or the IRS has failed to issue a refunds to the Plaintiff for the Plaintiff's Pending ERC Credit Claims.

## IV.    CAUSE OF ACTION

52.    A taxpayer of the United States is permitted to file a delayed refund suit against the United States, pursuant to 26 U.S.C. §§ 7422 and 6532, for the recovery of taxes imposed under Title 26 of the U.S. Code in U.S. District Court, provided:

   a.  a claim for refund has been filed with the IRS,

   b.  it has been at least six months from the date of such filing, or

   c.  it has been two years from the date the IRS notified the taxpayer that such a claim has been disallowed.

53.     Plaintiff is a taxpayer of the United States who has filed claims for refunds of its employment taxes imposed under Title 26 as summarized in the table below:

| i. Payroll Tax Quarter End | ii. Total ERC Credit Refund Claim |
|---|---|
| a.   3/31/2021 | 386,359.91 |
| b.   6/30/2021 | 401,117.82 |
| c.   9/30/2021 | 433,704.19 |
| d.   Total | 1,221,181.92 |

54.     Defendant, the United States of America, via its nonparty agency, the IRS, has failed to issue the claimed refunds to the Plaintiff since the filings.

55.     It has been longer than six months since the Plaintiff has filed the refund claims, and it has yet been two years from any notice of disallowance by the IRS to the Plaintiff.

56.     Plaintiff is entitled to the credits and its claims for refund as claimed and identified in statement no. 53 above, including any additional interest it is entitled to under 26 U.S.C. § 6611.

57.     Plaintiff is entitled to reasonable attorney's fees and legal costs associated with this cause of action pursuant to 26 U.S.C. § 7430.

## V.    PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays this Court orders the Defendant, United States:

- Issue refunds for the Plaintiff's claim for refund of taxes of $ 1,221,181.92.

- Issue additional refunds to Plaintiff for any interest entitled to it under 26 U.S.C. § 6611.

- Award Plaintiff reasonable attorney's fees and other legal costs permissible under 26 U.S.C. § 7430.

## VI.    TRIAL BY JURY DEMANDED

Plaintiff demands a trial by jury for all issues so triable.


Dated: July 1, 2025                    Respectfully submitted,

                                       ARMBRECHT JACKSON LLP
                                       Post Office Box 290
                                       Mobile, Alabama  36601
                                        (251) 405-1300

                                       By: */s/ Matthew W. Smith*
                                       MATTHEW  W.  SMITH  (SMITM5019),
                                       mws@ajlaw.com

                                       */s/    Justin H. DiLauro*
                                       JUSTIN H. DILAURO, ESQ.
                                       Sr. Tax Attorney and Owner/Manager

DiLauro Tax Law PLLC
9639 Hillcroft Street, Suite 844
Houston, Texas 77096
(888) 463-5829
(713) 456-2027 (fax)
JHD@DiLauroTaxLaw.com
USDC ALSD, *pro hac vice pending*
USDC TXSD: 3865386
Texas State Bar No: 24055404

Counsel for Plaintiff
Advance Mortgage & Investment Company,
LLC