IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ADVANCE MORTGAGE & INVESTMENT COMPANY, LLC | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 1:25-cv-00269-N |
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| Defendant. | ) |

## UNITED STATES OF AMERICA'S ANSWER

The defendant, United States of America, answers the separate and enumerated paragraphs set forth in the complaint filed by the plaintiff, Advance Mortgage & Investment Company, LLC, on July 1, 2025 (Doc. 1) (the "complaint") as follows. Further, any allegations by plaintiff, including those contained in the introductory paragraph of its complaint, that are not specifically admitted are denied (*see* Fed. R. Civ. P. 8(b)(3)). Regarding plaintiff's introductory paragraph, the United States does, however, admit that the plaintiff seeks to recover a refund of employment taxes and/or refundable employee retention credits in the amount of $1,221,181.92, plus interest, for the tax periods ended March 31, June 30, and September 30, 2021.

### I. JURISDICTION, VENUE, AND PARTIES

**1.** Admits that pursuant to 28 U.S.C. §§ 1340 and 1346(a)(1), this Court has jurisdiction over this civil action in which the plaintiff seeks a refund of internal revenue taxes for the tax periods ended March 31, June 30, and September 30, 2021.

**2.** Admits that venue in this judicial district is proper under 28 U.S.C. § 1402(a)(2) because the plaintiff's principal place of business is located in Baldwin County, Alabama.

**3.** Admits the allegations contained in paragraph 3 of the plaintiff's complaint.

    **4.**    Admits that the plaintiff has properly served, via certified mail, a copy of the summons and complaint, including accompanying exhibits, on the United States, by and through service on the civil-process clerk for the United States Attorney for the Southern District of Alabama on July 25, 2025, and the Attorney General of the United States on July 29, 2025.

    **5.**    Admits that the plaintiff has properly served, via certified mail, a copy of the summons and complaint, including accompanying exhibits, on the United States, by and through service on the Internal Revenue Service ("IRS").

## II. NATURE OF THE FEDERAL TAX ISSUE AND ACTION

### A. Federal Employment Taxes

    **6.**    Admits the allegations contained in paragraph 6 of the plaintiff's complaint.

    **7.**    Admits the allegations contained in paragraph 7 of the plaintiff's complaint, except denies that 26 U.S.C. §§ 3102 and 3402 are relevant authorities with regard to the employer's obligation to pay its share of FICA Payroll Taxes or its obligation to pay FUTA Taxes because they pertain to the employer's duty to withhold those taxes from its employees' paychecks.

    **8.**    Admits the allegations contained in paragraph 8 of the plaintiff's complaint, except denies that 26 C.F.R. § 31.6302(c)-(1) is a relevant authority because it applies to the deposits of FICA taxes and income tax withholdings that are attributable to payments made before January 1, 1993.

    **9.**    Admits the allegations contained in paragraph 9 of the plaintiff's complaint.

### B. The COVID-19 Pandemic-Related "CARES" Act Employee Retention Credit ("ERC")

    **10.**    Admits that in response to the COVID-19 global pandemic that commenced in the early part of 2020, Congress enacted the Coronavirus Aid, Relief and Economic Security Act, Pub L. No. 116-36, 134 Sta. 281 (the "CARES Act"), on March 27, 2020, but denies the

remaining allegations set forth in paragraph 10 of the plaintiff's complaint discussing its interpretation and characterization of the CARES Act.

11.     Admits that *(a)* Congress enacted section 2301 of the CARES Act on March 27, 2020, providing, *inter alia*, for the allowance of a refundable employee retention credit ("ERC") to eligible employers that paid qualified wages to certain employees after March 12, 2020, and before January 1, 2021; *(b)* Congress amended and modified the CARES Act by enacting Division EE of the Consolidated Appropriations Act, 2021 as part of the Taxpayer Certainty and Disaster Tax Relief Act of 2020, Pub. L. No. 116-260, 134 Stat. 1182 (the "Relief Act"), on December 27, 2020, providing, in part, for the extension of the ERC to eligible employers paying qualified wages through June 30, 2021; *(c)* Congress enacted section 9651 of the American Rescue Plan Act of 2021, Pub. L. No. 117-2, 135 Stat. 4 (the "ARPA"), on March 11, 2021, codifying the ERC provisions under section 3134 of the Internal Revenue Code, 26 U.S.C., and extending the ERC to eligible employers paying qualified wages after June 30, 2021, and before January 1, 2022; and *(d)* Congress enacted section 80604 of the Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, 135 Stat. 429 (the "IIJA"), on November 15, 2021, amending 26 U.S.C. § 3134(n), to limit allowance of the ERC for wages paid during the fourth quarter of 2021 to only qualifying wages paid by an eligible employer constituting a "recovery startup business" under 26 U.S.C. § 3134(c)(5). Congress later enacted section 70605 of the One Big Beautiful Bill Act, Pub. L. No. 119-21, 139 Stat. 72 (the "OBBBA"), on July 4, 2025, to further amend and modify the ERC provisions under 26 U.S.C. § 3134.

12.     Admits that for purposes of applying the ERC provisions for the tax periods ended March 31, June 30, and September 30, 2021, an employer may qualify as an "eligible employer" if it carried on a trade or business during the calendar quarter for which the ERC is claimed, and at least one of the following applies: *(a)* the operations of that trade or business were fully or partially suspended during such calendar quarter due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social,

religious or other purposes) on account of COVID-19; *(b)* the employer experienced a significant decline in gross receipts for such calendar quarter, as determined under the "gross receipts" tests under the CARES Act §§ 2301(c)(2)(A)(ii)(II) and (B), as amended by the Relief Act §§ 207(d)(1), (2), and 26 U.S.C. § 3134(c)(2)(A)(ii)(II) and (B); or *(c)* for calendar quarters beginning after June 30, 2021, the employer is a "recovery startup business" during such calendar quarter, as defined under 26 U.S.C. § 3134(c)(5) (*see* CARES Act §§ 2301(c)(2)(A)(i), (ii) and (B), as amended by the Relief Act §§ 207(d)(1), (2); 26 U.S.C. §§ 3134(c)(2)(A)(i), (ii) and(B)).  The United States denies the remaining allegations set forth in paragraph 12 of the plaintiff's complaint discussing its interpretation and characterization of the law and further denies that plaintiff's allegations support the conclusion that it qualifies as an eligible employer under the CARES Act and/or 26 U.S.C. § 3134.

### C. **ERC Qualification - Partial Suspension of Business Operations**

13.     Admits that for purposes of applying the ERC provisions for the tax periods ended March 31, June 30, and September 30, 2021, an employer may qualify as an "eligible employer" if it carried on a trade or business during the calendar quarter for which the ERC is claimed, and "the operation of the trade or business described in clause (i) is fully or partially suspended during the calendar quarter due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious or other purposes) due to the coronavirus disease 2019 (COVID-19)" (*see* CARES Act §§ 2301(c)(2)(A)(i), (ii)(I); 26 U.S.C. §§ 3134(c)(2)(A)(i), (ii)(I)), but denies the remaining allegations set forth in paragraph 13 of the plaintiff's complaint and further denies that plaintiff's allegations support the conclusion that it qualifies as an eligible employer under the CARES Act and/or 26 U.S.C. § 3134.

14.     The United States denies the allegations set forth in paragraph 14 of the plaintiff's complaint discussing its interpretation and characterization of IRS Notice 2021-20, but admits that the IRS Office of the Associate Chief Counsel (Employee Benefits, Exempt Organizations

and Employment Taxes) issued IRS Notice 2021-20, *Guidance on the Employee Retention Credit Under Section 2301 of the Coronavirus Aid, Relief and Economic Security Act*, on March 3, 2021, providing guidance on the ERC allowable under section 2301 of the CARES Act, as amended by section 206 of the Relief Act. In providing such guidance, section III of the notice discusses a variety of topics pertaining to the ERC using a question/answer format that involved providing answers to 71 questions. The notice provided guidance addressing the ERC as it applied to qualified wages paid after March 12, 2020, and before January 1, 2021. The notice did not address the changes made by section 207 of the Relief Act that applied to the ERC for qualified wages paid after December 31, 2020.

    15.    Admits that Q/A-17 of IRS Notice 2021-20 (excluding examples) states, in part:

> If an employer's workplace is closed due to a governmental order for certain purposes, but the employer's workplace may remain open for other limited purposes, the employer's operations would be considered to be partially suspended if, under the facts and circumstances, the operations that are closed are more than a nominal portion of its business operations and cannot be performed remotely in a comparable manner. If all, or all but a nominal portion, of an employer's business operations may continue, but the operations are subject to modification due to a governmental order (for example, to satisfy distancing requirements), such a modification of operations is considered to be a partial suspension of business operations due to a governmental order if the modification required by the governmental order has more than a nominal effect on the business operations under the facts and circumstances. See Q/A 18 for a description of factors that may be used for determining if a modification required by a governmental order has more than a nominal effect on business operations.

*See* IRS Notice 2021-20, Section III, Full or Partial Suspension of Business Operations, Q/A-17.

    16.    Admits that Q/A-18 of IRS Notice 2021-20 states, in part:

> The mere fact that an employer must make a modification to business operations due to a governmental order does not result in a partial suspension unless the modification has more than a nominal effect on the employer's business operations. Whether a modification required by a governmental order

> has more than a nominal effect on the business operations is based on the facts and circumstances.

*See* IRS Notice 2021-20, Section III, Full or Partial Suspension of Business Operations, Q/A-18.

17. Admits that Q/A-18 of IRS Notice 2021-20 states, in part:

> A governmental order that results in a reduction in an employer's ability to provide goods or services in the normal course of the employer's business of not less than 10 percent will be deemed to have more than a nominal effect on the employer's business operations.

*See* IRS Notice 2021-20, Section III, Full or Partial Suspension of Business Operations, Q/A-18.

### D. COVID-19 Gov't Orders - Federal CARES Act §§ 4022, 4023, 4024 Mortgage Forbearance and Foreclosure & Eviction Moratoriums

18. Admits the allegations contained in paragraph 18 of the plaintiff's complaint, except that the borrower must have made a timely forbearance extension request before the restrictions imposed under CARES Act § 4022 would apply and that vacant or abandoned properties were excepted from the foreclosure moratorium.

19. Admits that the CARES Act § 4023 provided that during the period covering March 27 through December 31, 2020, a multifamily borrower with a federally backed multifamily mortgage loan experiencing a financial hardship due to the COVID-19 emergency, directly or indirectly, could request a forbearance extension, and if the multifamily borrower made a timely request, the servicer of the loan must allow the forbearance for up to 30 to 90 days.

20. Admits the allegations contained in paragraph 20 of the plaintiff's complaint.

21. Admits the allegations contained in paragraph 21 that the restrictions imposed by sections 4022, 4023 and 4024 of the CARES Act qualify as governmental orders, but denies the remaining allegations set forth in paragraph 21 of the plaintiff's complaint because the United States lacks knowledge or information sufficient to form a belief about the truth of any allegation that such orders caused a full or partial suspension of the operations of the plaintiff's trade and business. Whether such a suspension occurred during the relevant calendar quarters depends on

the facts and circumstances of plaintiff's case, and plaintiff's allegations do not support a conclusion that its trade or business operations were suspended, whether fully or partially, during the tax periods ended March 31, June 30, and September 30, 2021, as required under the CARES Act §§ 2301(c)(2)(A)(i), (ii)(I); 26 U.S.C. §§ 3134(c)(2)(A)(i), (ii)(I).

### E.  COVID-19 Gov't Orders - U.S. Dept. of Housing & Urban Dev. (HUD) Mortgage Forbearance and Eviction & Foreclosure Moratorium

22.   Denies the allegations set forth in paragraph 22 of the plaintiff's complaint because the United States lacks knowledge or information sufficient to form a belief about the truth of the allegations and further denies that Exhibit "A" that was attached to the plaintiff's complaint included a true and correct copy of Mortgagee Letter 2021-05 (Feb. 16, 2021), except admits that the U.S. Department of Housing and Urban Development ("HUD") issued certain Mortgagee Letters ("MLs") during 2020 and 2021 and that the MLs relied on by the plaintiff are attached to its complaint as Exh. A.  The United States further admits that certain requirements imposed by the MLs referred to in plaintiff's complaint qualify as governmental orders, but lacks knowledge or information sufficient to form a belief about the truth of any allegation that such orders caused a full or partial suspension of the operations of the plaintiff's trade and business. Whether such a suspension occurred during the relevant calendar quarters depends on the facts and circumstances of plaintiff's case, and plaintiff's allegations do not support a conclusion that its trade or business operations were suspended, whether fully or partially, during the tax periods ended March 31, June 30, and September 30, 2021, as required under the CARES Act §§ 2301(c)(2)(A)(i), (ii)(I); 26 U.S.C. §§ 3134(c)(2)(A)(i), (ii)(I).

23.   Admits that on March 18, 2020, HUD issued ML 2020-04, *Foreclosure and Eviction Moratorium in connection with the Presidentially-Declared COVID-19 National Emergency,* informing mortgagees that properties secured by FHA-insured Single Family mortgages were subject to a foreclosure and eviction moratorium for a period of 60 days, but denies the remaining allegations set forth in paragraph 23 of the plaintiff's complaint.

**24.** Admits that from May 14, 2020, through July 30, 2021, HUD issued several MLs extending ML 2020-04's COVID-19 foreclosure and eviction moratorium, without any lapse, up to and including September 30, 2021, but denies the remaining allegations set forth in paragraph 24 of the plaintiff's complaint.

**25.** Admits that on April 1, 2020, HUD issued ML 2020-06, *FHA's Loss Mitigation Options for Single Family Borrowers Affected by the Presidentially-Declared COVID-19 National Emergency in Accordance with the CARES Act*, to inform "mortgagees of special Loss Mitigation Home Retention Options available to Single Family borrowers, as well as an extension period for Home Equity Conversion Mortgages (HECM), affected by the COVID-19 Presidentially-Declared National Emergency in accordance with the CARES Act" effective through October 30, 2020, and replace "FHA's Presidentially-Declared Major Disaster Areas (PDMDA) guidance listed in SF Handbook 4000.1 for Borrowers impacted by the COVID-19 National Emergency," but denies the remaining allegations set forth in paragraph 25 of the plaintiff's complaint.

**26.** Admits that from October 20, 2020, through June 25, 2021, HUD issued a number of MLs to extend the date for approving "the COVID-19 Forbearance or COVID-19 HECM Extension published in ML 2020-06," without any lapse, up to and including September 30, 2021, but denies the remaining allegations set forth in paragraph 26 of the plaintiff's complaint.

    **F.** **COVID-19 Gov't Orders - U.S. Consumer Financial Protection Bureau (CFPB) – 12 C.F.R. Part 1024 – Mortgage Loss Mitigation & Forbearance**

**27.** Denies the allegations set forth in paragraph 27 of the plaintiff's complaint because the United States lacks knowledge or information sufficient to form a belief about the truth of the allegations, except admits that on June 30, 2021, the Bureau of Consumer Financial Protection ("CFPB") amended Regulation X's mortgage servicing rules effective beginning on August 31, 2021, to implement certain protections intended for borrowers affected by the COVID-19 emergency under the Real Estate Settlement Procedures Act of 1974, Pub. L. No.

93-533, 88 Stat. 1724 (the "RESPA") and encourage borrowers and servicers to work together to effect such protections by, *inter alia*, ensuring that certain borrowers have a meaningful opportunity to be reviewed for loss mitigation before the servicers can make the first notice or filing to initiate foreclosure on such mortgages (*see generally*, 12 C.F.R. Part 1024) (the "CFPB Final Rule").  The United States further admits that certain requirements imposed by the CFPB Final Rule qualify as governmental orders, but lacks knowledge or information sufficient to form a belief about the truth of any allegation that such orders caused a full or partial suspension of the operations of the plaintiff's trade and business.  Whether such a suspension occurred during the relevant calendar quarters depends on the facts and circumstances of plaintiff's case, and plaintiff's allegations do not support a conclusion that its trade or business operations were suspended, whether fully or partially, during the tax periods ended March 31, June 30, and September 30, 2021, as required under the CARES Act §§ 2301(c)(2)(A)(i), (ii)(I); 26 U.S.C. §§ 3134(c)(2)(A)(i), (ii)(I).

  **28.** Admits that under the CFPB Final Rule, 12 C.F.R. § 1024.41(f)(3) (Jun. 30, 2021), effective for the period beginning on August 31, 2021, and ending on December 31, 2021, certain borrowers must be given a meaningful opportunity to pursue loss mitigation options, and the servicers were required to ensure compliance with this requirement by making certain that one of the procedural safeguards provided under the regulation had been met before commencing to foreclose on the mortgages, but denies the remaining allegations set forth in paragraph 28 of the plaintiff's complaint because the United States lacks knowledge or information sufficient to form a belief about the truth of the allegations.

  **29.** Admits that the CFPB Final Rule, 12 C.F.R. § 1024.31 (Jun. 30, 2021), defines the term "COVID–19–related hardship" as "a financial hardship due, directly or indirectly, to the national emergency for the COVID–19 pandemic declared in Proclamation 9994 on March 13, 2020 (beginning on March 1, 2020) and continued on February 24, 2021, in accordance with section 202(d) of the National Emergencies Act (50 U.S.C. § 1622(d))," but denies the remaining

allegations set forth in paragraph 29 of the plaintiff's complaint because the United States lacks knowledge or information sufficient to form a belief about the truth of the allegations.

### G. ERC - Credit Amount Determination

30. Admits that in the case of an eligible employer seeking to recover an ERC refund for each of the four quarters of 2020, there shall be allowed as a credit against the applicable employment taxes for each calendar quarter, an amount equal to 50 percent of the qualified wages with respect to each employee of such employer for such calendar quarter (*see* CARES Act § 2301(a)), and that qualified wages cannot exceed $10,000 per employee for all calendar quarters (*see* CARES Act § 2301(b)(1)) and, therefore, the credit per employee is limited to $5,000 for the calendar year 2020, but denies the remaining allegations set forth in paragraph 30 of the plaintiff's complaint.

31. Admits that in the case of an eligible employer (other than a recovery startup business) seeking to recover an ERC refund for each of the first three quarters of 2021, there shall be allowed as a credit against the applicable employment taxes for each calendar quarter, an amount equal to 70 percent of the qualified wages with respect to each employee of such employer for such calendar quarter (*see* CARES Act § 2301(a), as amended by § 207(b) of the Relief Act; 26 U.S.C. § 3134(a)), and that qualified wages cannot exceed $10,000 per employee per calendar quarter (*see* CARES Act § 2301(b)(1), as amended by § 207(c) of the Relief Act; 26 U.S.C. § 3134(b)(1)(A)) and, therefore, the credit per employee is limited to $7,000 for each calendar quarter, but denies the remaining allegations set forth in paragraph 31 of the plaintiff's complaint.

32. Admits the allegations contained in paragraph 32 of the plaintiff's complaint.

### H. ERC - Refundability and Amendment for Refund Claim

33. Admits that if an ERC is allowed for the tax periods ended March 31, June 30, and/or September 30, 2021, and the ERC for each such quarter exceeds the applicable employment taxes (reduced by certain credits) on the wages paid with respect to the employment

of all the employees of the eligible employer for such calendar quarter, then such excess shall be treated as an overpayment that shall be refunded under 26 U.S.C. §§ 6402(a) and 6413(b) (*see* CARES Act §§ 2301(a) and (b)(2), (3); 26 U.S.C. §§ 3134(a) and (b)(2), (3)), but denies the remaining allegations set forth in paragraph 33 of the plaintiff's complaint.

  34. Admits the allegations contained in paragraph 34 of the plaintiff's complaint.

  **I.** **Submitting Amended Tax Returns & Other Tax Documents to the IRS**

  35. Admits the allegations contained in paragraph 35 of the plaintiff's complaint, except that the mailing requirements of 26 U.S.C. § 7502(a)(2) are met only if the postmark date falls within the prescribed period for filing the "return, claim, statement or other document."

  36. Admits the allegations contained in paragraph 36 of the plaintiff's complaint, provided that the mailing was made on or before the date the document was due to be filed with the IRS.

  37. Admits the allegations contained in paragraph 37 of the plaintiff's complaint.

  **III.** **PLAINTIFF BACKGROUND AND FACTUAL ASSERTIONS**

  **A.** **Company Overview - Mortgage Loan Service Provider**

  38. Admits that the plaintiff's principal place of business is located in Spanish Fort, Alabama, but denies the remaining allegations set forth in paragraph 38 of the plaintiff's complaint because the United States lacks knowledge or information sufficient to form a belief about the truth of the allegations.

  39. Admits that the plaintiff was obligated to pay FICA taxes for the second, third and fourth quarters of 2020 and the first, second and third quarters of 2021, but denies the remaining allegations set forth in paragraph 39 of the plaintiff's complaint because the United States lacks knowledge or information sufficient to form a belief about the truth of the allegations.

  40. Denies the allegations set forth in paragraph 40 of the plaintiff's complaint because the United States lacks knowledge or information sufficient to form a belief about the truth of the allegations.

### B. COVID-19 Partial Suspension - FHA-Insured Mortgages

41. Denies the allegations set forth in paragraph 41 of the plaintiff's complaint because the United States lacks knowledge or information sufficient to form a belief about the truth of the allegations.

42. Denies the allegations set forth in paragraph 42 of the plaintiff's complaint because the United States lacks knowledge or information sufficient to form a belief about the truth of the allegations.

43. Denies the allegations set forth in paragraph 43 of the plaintiff's complaint because the United States lacks knowledge or information sufficient to form a belief about the truth of the allegations.

44. Denies the allegations set forth in paragraph 44 of the plaintiff's complaint because the United States lacks knowledge or information sufficient to form a belief about the truth of the allegations.

### C. Plaintiff ERC Credit Claims

45. Admits that the plaintiff timely filed its original Forms 941, "Employer's QUARTERLY Federal Tax Returns," for the tax periods ended March 31, June 30, and September 30, 2021, and that it did not claim the ERC on such originally filed Forms 941, but denies the remaining allegations set forth in paragraph 45 of the plaintiff's complaint because the United States lacks knowledge or information sufficient to form a belief about the truth of the allegations.

46. Denies the allegations set forth in paragraph 46 of the plaintiff's complaint because the United States lacks knowledge or information sufficient to form a belief about the truth of the allegations.

47. Admits the allegations contained in paragraph 47 of the plaintiff's complaint, but denies that plaintiff is entitled to claim such ERC tax credits.

**48.** Admits that on May 28, 2023, the plaintiff filed Forms 941-X, "Adjusted Employer's QUARTERLY Federal Tax Return or Claim for Refund," for the tax periods ended March 31, June 30, and September 30, 2021, requesting an ERC refund in the amount of $386,359.91, $401,117.82, and $433,704.19, respectively, but denies the remaining allegations set forth in paragraph 48 of the plaintiff's complaint because the United States lacks knowledge or information sufficient to form a belief about the truth of the allegations and further denies that the plaintiff is entitled to such refund.

**49.** Denies the allegations set forth in paragraph 49 of the plaintiff's complaint because the United States lacks knowledge or information sufficient to form a belief about the truth of the allegations, except admits that the litigation of the plaintiff's refund action may proceed in this Court.

**50.** Denies the allegations set forth in paragraph 50 of the plaintiff's complaint because the United States lacks knowledge or information sufficient to form a belief about the truth of the allegations.

**51.** Admits that the IRS has not issued ERC refunds to the plaintiff for the tax periods ended March 31, June 30, and September 30, 2021, but denies that the IRS has failed to issue the refunds and further denies that the plaintiff is entitled to such refunds.

## IV.  CAUSE OF ACTION

**52.** Admits that a taxpayer may commence a civil refund suit to recover any internal revenue taxes but may only do so after expiration of six (6) months from the date of filing an administrative refund claim required under 26 U.S.C. § 7422(a) unless the IRS renders a decision within the 6-month period, and before expiration of two (2) years from the date of mailing by certified mail or registered mail by the IRS to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates (*see* 26 U.S.C. §§ 6532(a) and 7422(a)), but denies the remaining allegations set forth in paragraph 52 of the plaintiff's complaint.

53. Admits the allegations contained in paragraph 53 of the plaintiff's complaint, but denies that the plaintiff is entitled to such refunds.

54. Admits that the IRS has not issued ERC refunds to the plaintiff for the tax periods ended March 31, June 30 and September 30, 2021, but denies that the IRS has failed to issue the refunds and further denies that the plaintiff is entitled to such refunds.

55. Admits that when the plaintiff commenced this refund action on July 1, 2025, six months had expired since the plaintiff filed its administrative refund claims (Forms 941-X ) for the tax periods ended March 31, June 30 and September 30, 2021, on May 28, 2023, and two years has not yet expired since the IRS issued its Notice of Disallowance on July 23, 2024, disallowing the plaintiff's Form 941-X for the tax period ended September 30, 2021.

56. Denies the allegations set forth in paragraph 56 of the plaintiff's complaint.

57. Denies the allegations set forth in paragraph 57 of the plaintiff's complaint.

## JURY TRIAL DEMAND

No response is required.

## PRAYER FOR RELIEF

**WHEREFORE**, the defendant, United States of America, requests that the Court deny the relief sought in plaintiff's complaint and grant the United States such other and further relief as is just and proper under the circumstances, including an award of its costs.

Dated this 23rd day of September 2025.

Respectfully submitted,

*/s/ Lynne M. Murphy*
LYNNE M. MURPHY
Trial Attorney, Tax Division
U.S. Department of Justice
La. Bar No. 20465
D.C. Bar No. 485928
P.O. Box 14198
Ben Franklin Station
Washington, D.C.  20044

Telephone: (202) 514-5881
E-mail: lynne.m.murphy@usdoj.gov

OF COUNSEL:

SEAN P. COSTELLO
United States Attorney

## CERTIFICATE OF SERVICE

**IT IS HEREBY CERTIFIED** that service of the foregoing United States of America's Answer, has this 23rd day of September 2025, been made by electronically filing the foregoing with the Clerk of Court using the CM/ECF system which sends e-mail notification of such filing to the following attorneys of record:

> Matthew W. Smith, Esq.
> mws@ajlaw.com
>
> Justin H. DiLauro, Esq.
> JHD@DiLauroTaxLaw.com

> /s/ Lynne M. Murphy
> Trial Attorney, Tax Division
> U.S. Department of Justice
> P.O. Box 14198
> Ben Franklin Station
> Washington, D.C. 20044

13540772.1